UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
MARK MALONEY,

                      Plaintiff,

          - against -

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
20-CV-3817 (PKC)

PAMELA K. CHEN, United States District Judge:

      Plaintiff Mark Maloney brings this action under 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration's ("SSA") denial of his claim for Disability Insurance Benefits ("DIB"). The parties have cross-moved for judgment on the pleadings. (Dkts. 9, 12.) For the reasons below, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's motion. The case is remanded for further proceedings consistent with this Memorandum and Order.

**BACKGROUND**

**I.    Procedural History**

      On December 28, 2016, Plaintiff filed an application for DIB, claiming that, since August 1, 2016, he had been disabled due to degenerative disc disease of the cervical and lumbar spine,[1]

---

[1] "Intervertebral disc disease is a common condition characterized by the breakdown (degeneration) of one or more of the discs that separate the bones of the spine (vertebrae), causing pain in the back or neck and frequently in the legs and arms." MedlinePlus, *Intervertebral disc disease*, U.S. National Library of Medicine, https://medlineplus.gov/genetics/condition/intervertebral-disc-disease/ (last visited Mar. 14, 2022). While intervertebral disc disease is "a natural progression of the aging process," degenerative disc disease "is a pathologic condition associated with [intervertebral disc disease] that has been associated with chronic back pain." National Center for Biotechnology Information, *Intervertebral Disk Degeneration and Repair*, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5585783/ (last visited Mar. 15, 2022).

1

status post C4-6 anterior cervical discectomy and fusion ("ACDF"),[2] right shoulder impingement/bursitis,[3] incomplete labral tear[4] and acromioclavicular ("AC") joint arthrosis,[5] concussion, and several impairments related to his hands.[6] (Administrative Transcript ("Tr."[7]), Dkt. 8, at 10, 12–13.) The state agency denied his claim on May 19, 2017. (*Id.* at 10.) Plaintiff requested and appeared for a hearing before an administrative law judge ("ALJ") on April 12,

---

[2] "Anterior cervical discectomy and fusion (ACDF) is a type of neck surgery that involves removing a damaged disc to relieve spinal cord or nerve root pressure and alleviate corresponding pain, weakness, numbness, and tingling." Spine-Health, *ACDF: Anterior Cervical Discectomy and Fusion*, https://www.spine-health.com/treatment/spinal-fusion/acdf-anterior-cervical-discectomy-and-fusion (last visited Mar. 15, 2022).

[3] "A bursa is a small, fluid-filled sac that acts as a cushion between a bone and other moving parts, such as muscles, tendons, or skin. Bursitis occurs when a bursa becomes inflamed." MedlinePlus, *Bursitis*, U.S. National Library of Medicine, https://medlineplus.gov/bursitis.html (last visited Mar. 15, 2022). Impingement Syndrome occurs "[w]hen tendons become trapped under the acromion, the rigid bony arch of the shoulder blade," causing shoulder pain. MedlinePlus, *Impingement syndrome*, U.S. National Library of Medicine, https://medlineplus.gov/ency/imagepages/19614.htm (last visited Mar. 15, 2022).

[4] A labral tear is a tear of the labrum, which is "a cup-shaped rim of cartilage that lines and reinforces the ball-and-socket joint of the shoulder." Stephen Fealy, MD, *Shoulder Labrum Tears: An Overview*, Hospital for Special Surgery, https://www.hss.edu/conditions_shoulder-labrum-tears-overview.asp (last visited Mar. 15, 2022).

[5] Arthrosis, commonly referred to as osteoarthritis, "is a type of arthritis that only affects the joints, usually in the hands, knees, hips, neck, and lower back." Medline Plus, *Osteoarthritis*, U.S. National Library of Medicine, https://medlineplus.gov/osteoarthritis.html (last visited Mar. 15, 2022). The acromioclavicular joint is a joint in the shoulder. OrthoInfo, *Shoulder Trauma (Fractures and Dislocations)*, American Academy of Orthopedic Surgeons, https://orthoinfo.aaos.org/en/diseases--conditions/shoulder-trauma-fractures-and-dislocations (last visited Mar. 15, 2022).

[6] Plaintiff alleged several injuries related to his hands, including "cyst, volar mid and proximal phalanx, second digit, left hand; mild to moderate first carpometacarpal joint osteoarthritis, right thumb; moderate strain or particular tear of the ulnar collateral ligament of the thumb MDC joint." (Tr. at 13.)

[7] Page references prefaced by "Tr." refer to the continuous pagination of the Administrative Transcript and not to the internal pagination of the constituent documents or the pagination generated by the Court's CM/ECF docketing system.

2

2019. (*Id.* at 10, 58–96.) By decision dated June 11, 2019, ALJ Michael McKenna found that Plaintiff was not disabled within the meaning of the Social Security Act (the "Act"). (*Id.* at 7–21.) The SSA Appeals Council denied Plaintiff's request for a review of the ALJ's decision on July 23, 2020. (*Id.* at 1–6.) Thereafter, Plaintiff timely commenced this action.[8]

## II.   The ALJ's Decision

### A.   The Five-Step Inquiry

In evaluating disability claims, the ALJ must conduct a five-step inquiry. The plaintiff bears the burden of proof at the first four steps of the inquiry, and the Commissioner bears the burden at the final step. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citation omitted). First, the ALJ determines whether the plaintiff is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the answer is yes, the plaintiff is not disabled. *Id.*

If the answer is no, the ALJ proceeds to the second step to determine whether the plaintiff suffers from a severe impairment. *Id.* § 404.1520(a)(4)(ii). An impairment is severe when it "significantly limit[s] [the plaintiff's] physical or mental ability to do basic work activities." *Id.*

---

[8] Under Section 405(g),

> [a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g). "Under the applicable regulations, the mailing of the final decision is presumed received five days after it is dated unless [Plaintiff] makes a reasonable showing to the contrary." *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-CV-4724 (PKC), 2015 WL 1439862, at *3 (E.D.N.Y. Mar. 27, 2015) (citing 20 C.F.R. §§ 404.981, 422.210(c)). Applying this standard, the Court determines that Plaintiff received the Commissioner's final decision on July 28, 2020 (*i.e.*, five days after Plaintiff's request to appeal the ALJ's decision was denied on July 23, 2020) and that Plaintiff's filing of the instant action on August 20, 2020—28 days later—was timely. (*See generally* Complaint, Dkt. 1.)

3

§ 404.1522(a). If the plaintiff does not suffer from an impairment or combination of impairments that is severe, then the plaintiff is not disabled. *Id.* § 404.1520(a)(4)(ii).

If the plaintiff does suffer from an impairment or combination of impairments that is severe, then the ALJ proceeds to the third step and considers whether it meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). *Id.* § 404.1520(a)(4)(iii); *see also id.* pt. 404, subpt. P, app. 1. If the ALJ determines at step three that the plaintiff has one of the listed impairments, then the ALJ will find that the plaintiff is disabled under the Act. *Id.* § 404.1520(a)(4)(iii).

If the plaintiff does not have a listed impairment, the ALJ must determine the plaintiff's residual functional capacity ("RFC")[9] before continuing to steps four and five. *See id.* § 404.1520(a)(4)(iv). To determine the plaintiff's RFC, the ALJ must consider the plaintiff's "impairment(s), and any related symptoms, . . . [that] may cause physical and mental limitations that affect what [the plaintiff] can do in a work setting." *Id.* § 404.1545(a)(1). The ALJ is responsible for assessing the plaintiff's RFC "based on all the relevant evidence in the case record." *Pellot v. Comm'r of Soc. Sec.*, No. 18-CV-3337 (AMD), 2019 WL 3500919, at *1 (E.D.N.Y. July 31, 2019) (citation omitted). The ALJ will then use the RFC finding in step four to determine if the plaintiff can perform past relevant work. *Id.* § 404.1520(a)(4)(iv). If the answer is yes, the plaintiff is not disabled. *Id.* If the plaintiff cannot, or if no past relevant work exists, the ALJ will

---

[9] "[A]n individual's RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013) (*per curiam*) (citation and quotations omitted). "[A] claimant is not disabled if her 'residual functional capacity and vocational abilities make it possible for her to do work which exists in the national economy, but she remains unemployed because of her inability to get work,' or because of 'the hiring practices of employers,' or because [the plaintiff] 'would not actually be hired to do work she could otherwise do.'" *Sczepanski v. Saul*, 946 F.3d 152, 157 (2d Cir. 2020) (quoting 20 C.F.R. § 416.966(c)(1), (3), (7)) (alterations omitted).

4

proceed to step five and determine whether the plaintiff, given his or her RFC, age, education, and work experience, has the capacity to perform other substantial gainful work in the national economy. *Id.* § 404.1520(a)(4)(v). If the answer is yes, the plaintiff is not disabled; otherwise, the plaintiff is disabled and is entitled to benefits. *Id.*

### B. The ALJ's Decision

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity "since August 1, 2016, the alleged onset date." (Tr. at 12.) At step two, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease of the cervical spine with a history of anterior cervical discectomy and fusion at C4-6; degenerative disc disease of the lumbar spine; and right shoulder impingement/bursitis with incomplete labral tear and acromioclavicular joint arthrosis.[10] (*Id.*) At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the listed impairments in the Listings. (*Id.* at 13.) The ALJ's decision was based solely on the opinions of two consultative examiners, one of whom opined that Plaintiff could sit, stand, and walk, but should not lift/carry more than 10 pounds overhead or pull overhead (*id*. at 360), and the other who opined that Plaintiff had "marked limitations in terms of standing for prolonged periods of time as well as carrying heavy objects and involving overreaching activities" (*id.* at 368).

The ALJ then determined Plaintiff's RFC as follows: "the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)[11] except he can

---

[10] The ALJ determined that Plaintiff's injuries to his hands "singly and in combination, do not cause significant limitation in the claimant's ability to perform basic work activities." (Tr. at 13.)

[11] Under 20 C.F.R. § 404.1567(b):

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted

5

stand/walk for 6 hours; sit for 6 hours; occasionally reach overhead bilaterally; occasionally climb ramps/stairs; never climb ladders/ropes/scaffolds; frequently balance, stoop, kneel, crouch and crawl." (*Id.* at 13–14.) At step four, the ALJ concluded that Plaintiff could not perform his past work as a nurse assistant. (*Id.* at 19.) Finally, at step five, the ALJ found that there were other jobs that exist in significant numbers in the national economy that Plaintiff can perform. (*Id.* at 20.) The ALJ thus concluded that Plaintiff was not disabled. (*Id.* at 21)

## STANDARD OF REVIEW

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of benefits. 42 U.S.C. § 405(g). In reviewing a final decision of the Commissioner, the Court's role is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera*, 697 F.3d at 151 (citation and quotations omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (*per curiam*) (quotations and brackets omitted). In determining whether the Commissioner's findings were based on substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* (citation and quotations omitted). However, "it is up to the agency, and not this court, to weigh the conflicting evidence in the record." *Clark v. Comm'r*

---

may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

6

*of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld. 42 U.S.C. § 405(g); *see also Cichocki v. Astrue*, 729 F.3d 172, 175–76 (2d Cir. 2013) (*per curiam*).

## DISCUSSION

Plaintiff contends that the ALJ's decision is not supported by substantial evidence and fails to apply the relevant legal standards. (Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings ("Pl.'s Mot."), Dkt. 9-1, at 9.) For the reasons below, the Court grants Plaintiff's motion and remands to the SSA because the ALJ failed to adequately develop the record, violated the treating physician rule,[12] and provided an RFC that was not supported by substantial evidence. *See Fontanez v. Colvin*, No. 16-CV-1300 (PKC), 2017 WL 4334127, at *13–27 (E.D.N.Y. Sept. 28, 2017) (remanding after the court determined that the record had not been fully developed and that the RFC was not supported by substantial evidence); *Arzuaga v. Bowen*, 833 F.2d 424, 426 (2d Cir. 1987) (remanding so the ALJ could comply with the treating physician rule).

**I.     Failure to Develop the Record and Violation of the Treating Physician Rule**

"The ALJ's failure to develop the record is a threshold issue, because the Court cannot rule on whether the ALJ's decision regarding [Plaintiff's] functional capacity was supported by substantial evidence if the determination was based on an incomplete record." *Craig v. Comm'r of Soc. Sec.*, 218 F. Supp. 3d 249, 267 (S.D.N.Y. 2016) (quotations omitted); *accord Alvarez v.*

---

[12] Although recently adopted legislation has eliminated the "treating physician rule," it still applies to claims filed with the SSA before March 27, 2017. *See* 20 C.F.R. §§ 404.1527, 404.1520c; *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5844, *5867–68 (Jan. 18, 2017).

7

*Comm'r of Soc. Sec.*, No. 14-CV-3542 (MKB), 2015 WL 5657389, at *14 (E.D.N.Y. Sept. 23, 2015).  An ALJ presiding over a social security hearing must "affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citation omitted).  This obligation exists "even where, as here, the claimant is represented by counsel."  *Merriman v. Comm'r of Soc. Sec.*, No. 14-CV-3510 (PGG) (HBP), 2015 WL 5472934, at *18 (S.D.N.Y. Sept. 17, 2015) (quoting *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996)).  And even when a plaintiff does not raise the issue, as here, "the Court must independently consider whether the ALJ failed to satisfy his duty to develop the record."  *Prieto v. Comm'r of Soc. Sec.*, No. 20-CV-3941 (RWL), 2021 WL 3475625, at *10 (S.D.N.Y. Aug. 6, 2021) (collecting cases).

Here, the ALJ's failure to obtain a medical opinion from any of Plaintiff's treating physicians requires remand for further development of the record.  As part of an ALJ's "regulatory obligations to develop a complete medical record before making a disability determination," *Pratts*, 94 F.3d at 37, an ALJ must attempt to obtain medical opinions—not just medical records—from a claimant's treating physicians, *Romero v. Comm'r of Soc. Sec.*, No. 18-CV-10248 (KHP), 2020 WL 3412936, at *13 (S.D.N.Y. June 22, 2020) (collecting cases).  To fulfill that obligation, an ALJ must make an initial request for medical opinions and, if no opinion is received, make a follow-up request between 10 and 20 days after the initial request.  *Prieto*, 2021 WL 3475625 at *10; 20 C.F.R § 404.1512(b)(1)(i).  Medical opinions from treating physicians are critical because, beyond simply diagnosing the patient's impairment, they relate the impairment to the patient's functional capacity.  *Guillen v. Berryhill*, 697 F. App'x 107, 109 (2d Cir. 2017) (summary order) ("The medical records discuss [the claimant's] illnesses and suggest treatment for them, but offer

8

no insight into how her impairments affect or do not affect her ability to work, or her ability to undertake her activities of everyday life.").

While the record contains treatment notes from Plaintiff's numerous treating physicians, there are no medical opinions from a treating source that discuss Plaintiff's work-related functioning. Following a car accident in August 2016, Plaintiff began treatment with Dr. Antonio Garcia, an internist, for cervical spine, left shoulder, and lumbar spine pain. (Tr. at 533.) Dr. Garcia treated Plaintiff with cortisone injections and prescribed physical therapy. (*Id.*) In January 2017, Dr. Garcia opined in a note that Plaintiff "remain[ed] disabled." (*Id.*) In May 2017, Dr. Garcia observed that Plaintiff had not fully recovered from the accident and that "[i]t can be stated within a reasonable degree of medical certainty that the injuries affecting [Plaintiff] are progressive with recurrent exacerbations." (*Id.* at 535.) During this session, Dr. Garcia discussed surgery for Plaintiff's left shoulder and lumbar spine, and concluded that "[t]he deficit that he continues to exhibit has impacted [] his daily activities of living and functions." (*Id.*) Although unclear from the treatment notes, Plaintiff testified that Dr. Garcia prescribed a back brace, which Plaintiff continues to wear. (*Id.* at 74–75.) Additionally, treatment records show Plaintiff underwent physical therapy multiple times per week from May 2017 until the April 2019 ALJ hearing.[13] (Tr. 395–492, 538–604, 625–28.) The ALJ, however, did not obtain an opinion from Dr. Garcia regarding Plaintiff's work-related functioning.

Plaintiff also received treatment for his shoulder pain from Dr. Keith Johnson, an orthopedist, beginning in November 2016. (*Id.* at 631.) Along with prescribing physical therapy

---

[13] The record does not contain physical therapy notes from November 2018 through March 2019. It is unclear if Plaintiff stopped physical therapy during this time or if the record does not contain these session notes. The ALJ noted in his decision, however, that Plaintiff has been in physical therapy since May 2017. (Tr. at 16.)

9

and cortisone injections (*id.* at 639, 641, 644), Dr. Johnson performed arthroscopic surgery on Plaintiff's right shoulder in March 2017 (*id.* at 635–37). In January 2018, Plaintiff and Dr. Johnson discussed possible additional surgery. (*Id.* at 647.) Dr. Johnson also referred Plaintiff to Dr. Gary Gonya, an orthopedic spine specialist, given Plaintiff's complaints of back pain. (*Id.* at 650.) The ALJ did not obtain an opinion regarding Plaintiff's work-related functioning from Dr. Johnson.

Plaintiff was briefly treated by Dr. R.C. Krishna, a neurologist, from June 2017 to September 2017. (*Id.* at 494–513.) In June 2017, Dr. Krishna observed that "[t]he clinical features are consistent with cerebrovascular concussion, cervical and lumbar disc hernations [*sic*] resulting in cervical and lumbar radiculopathy and neuropathic pain syndrome and traumatic brain injury." (*Id.* at 495.) The ALJ did not obtain an opinion from Dr. Krishna regarding Plaintiff's work-related functioning.

Dr. Gary Gonya, an orthopedic surgeon, began treating Plaintiff in April 2018. (*Id.* at 651–62.) Dr. Gonya diagnosed Plaintiff with cervical radiculopathy with disc herniation at C4-5 and C5-6.[14] (*Id.* at 631.) Dr. Gonya performed an anterior cervical discectomy and fusion surgery at C4-6 on Plaintiff in September 2018. (*Id.* at 616.) Plaintiff testified at the ALJ hearing that Dr. Gonya prescribed a neck brace, which Plaintiff continues to wear. (*Id.* at 74.) The ALJ did not obtain an opinion from Dr. Gonya regarding Plaintiff's work-related functioning.

Dr. Laurie LaMarre, a chiropractor, provided a medical assessment shortly after the April 2019 ALJ hearing. (*Id.* at 51–52.) Although the record does not clarify whether Dr. LaMarre is a treating source, Dr. LaMarre is affiliated with Brooklyn Spine and Wellness Center, the office

---

[14] C4-5 and C5-6 are the intervertebral discs between two vertebrae in the spine. National Center for Biotechnology Information, *Cervical Disc Herniation*, https://www.ncbi.nlm.nih.gov/books/NBK546618/ (last visited Mar. 15, 2022). The intervertebral discs and vertebrae form the vertebral column, or spine. *Id.*

10

where Plaintiff was treated by Dr. Garcia and received physical therapy beginning in May 2017. (*Id.*)  Dr. LaMarre diagnosed Plaintiff with cervical brachial syndrome, cervical stenosis, cervical disc displacement at C5-6, cervical spondylosis with radiculopathy, lower back pain/Sciatica, lumbar intervertebral disc displacement, lumbar spondylosis, and Myalgia.  (*Id.*)  Dr. LaMarre, opined that "the lumbar support belt is an important component in stabilizing [Plaintiff's] spinal condition."  (*Id.*)  The ALJ did not obtain an opinion regarding work-related functioning from Dr. LaMarre.

As noted, the record in this case contains no medical opinions from any of Plaintiff's numerous treating physicians, including Drs. Johnson, Gonya, Garcia, Krishna, and LaMarre.  Nor does the record reveal any attempt by the ALJ to obtain medical opinions from those sources.  This alone is grounds to remand.  *See Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999) (remanding due to the ALJ's failure to obtain "adequate information from [the claimant's] treating physician"); *Wilson v. Colvin*, 107 F.Supp.3d 387, 405 (2d Cir. 1982) (remanding where there was an obvious gap in the record); *Oliveras Ex Rel. Gonzalez v. Astrue*, No. 07-CV-2841 (RMB) (JCF), 2008 WL 2262618, at *6–7 (S.D.N.Y. May 30, 2008) (remanding so the ALJ could make all reasonable efforts to obtain a treating physician's opinion).

Further, a failure to make reasonable efforts to obtain treating physician opinions violates the treating physician rule, which also requires remand.  *See Lacava v. Astrue*, No. 11-CV-7727 (WHP) (SN), 2012 WL 6621731, at *13 (S.D.N.Y. Nov. 27, 2012), ("[T]he 'treating physician rule' is inextricably linked to the duty to develop the record.  Proper application of the rule ensures that the claimant's record is comprehensive, including all relevant treating physician diagnoses and opinions, and requires the ALJ to explain clearly how these opinions relate to the final determination."), *report and recommendation adopted*, 2012 WL 6621722 (S.D.N.Y. Dec. 19,

11

2012); *Ubiles v. Astrue*, No. 11-CV-6340T (MAT), 2012 WL 2572772, at *9 (W.D.N.Y. Jul. 2, 2012) ("Lacking important information–namely, the function-by-function assessment from [the claimant's treating physician], the ALJ was unable to properly apply the treating physician rule and instead gave controlling weight to the consultative physician's opinion. This was legal error."). While an ALJ may reject a treating physician's opinion, the ALJ must at least explain the basis for doing so. *See Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). Here, because the ALJ failed to obtain opinions from any of Plaintiff's treating physicians, he necessarily failed to discuss them or explain why he was rejecting them in favor of the opinions of two consultative examiners.

## II. The ALJ's RFC Finding Is Not Supported by Substantial Evidence

The Court further concludes that the ALJ's RFC finding is not supported by substantial evidence. *See Talavera*, 697 F.3d at 151; *Selian*, 708 F.3d at 417 ("'Substantial evidence' . . . means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (brackets omitted) (quoting *Richardson*, 402 U.S. at 401). Medical records in themselves are not enough because an "ALJ's RFC determination must be supported by a medical *opinion* in the record at that time." *Pearson v. Comm'r of Soc. Sec.*, 20-CV-3030 (AMD), 2021 WL 3373132, at *4 (E.D.N.Y. Aug. 3, 2021) (emphasis added).

Here, the ALJ considered two medical opinions provided by consultative examiners in 2017. (Tr. at 19.) Dr. Kevin Johnson,[15] an orthopedist, provided a medical opinion in January

---

[15] The Court notes that there are two Dr. Johnsons in this case: Dr. *Kevin* Johnson, a consultative examiner, and Dr. *Keith* Johnson, Plaintiff's aforementioned orthopedist. The record indicates that consultant Dr. *Kevin* Johnson examined Plaintiff at least twice, once in December 2016 and again in January 2017, but did not treat Plaintiff. (Tr. at 356, 361.) Dr. Kevin Johnson merely provided an opinion at the behest of the New York Office of Temporary and Disability Assistance (and not even at the request of the SSA or ALJ). (*Id.* at 15.)

2017, concluding Plaintiff could sit, stand, and walk. (*Id.* at 360.) Dr. Kevin Johnson noted that Plaintiff should not lift/carry more than 10 pounds overhead nor pull overhead. (*Id.*) The ALJ found Dr. Kevin Johnson's opinion persuasive—again, while not obtaining or considering any of Plaintiff's multiple treating physicians' opinions. (*Id.* at 19.)

In February 2017, Dr. Trevor Litchmore, a consultative internist,[16] opined that Plaintiff had "marked limitations in terms of standing for prolonged periods of time as well as carrying heavy objects and involving overreaching activities." (*Id.* at 368.) The ALJ concluded that Dr. Litchmore's opinion was "somewhat persuasive" (*id.* at 19), despite being "vague" and not supported by Dr. Litchmore's examination notes, which generally indicated that Plaintiff had no limitations standing for prolonged periods of time (*id.*).

Drs. Johnson's and Litchmore's consultative examinations do not constitute substantial evidence for several reasons. First, Drs. Johnson's and Litchmore's opinions, provided nearly two and a half years before the April 2019 hearing, did not account for deterioration in Plaintiff's condition, and were thus stale. *Biro v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 464, 470 (W.D.N.Y. 2018) ("A medical opinion may be stale if it does not account for the claimant's deteriorating condition." (citation and quotations omitted)); *see also Jones v. Comm'r of Soc. Sec.*, No. 10-CV-5831 (RJD), 2012 WL 3637450, at *2 (E.D.N.Y. Aug. 22, 2012). The record suggests that Plaintiff's pain symptoms worsened between 2017 and 2019, such that Plaintiff began treatment with Drs. Gonya and Krishna during that period. (Tr. at 494 (Plaintiff began treatment with Dr. Krishna in June 2017), 651 (Plaintiff began treatment with Dr. Gonya in April 2018).) For example, in June 2017, Plaintiff noted a "flare-up" of neck and lower back pain. (*Id.* at 538.) Plaintiff also underwent two surgeries related to his physical impairments in March 2017 and

---

[16] Dr. Litchmore examined Plaintiff on February 13, 2017. (Tr. 366.)

13

September 2018, and additional surgeries were discussed. (*Id.* at 616, 635–37, 647.) Finally, Plaintiff began wearing neck and back braces after Dr. Johnson's and Litchmore's opinions were provided.[17] (*Id.* at 74–75.) Given the apparent worsening of Plaintiff's impairments in the interim, the ALJ could not properly rely on either of these consultative examiners' two-year-old opinions.

Second, in rejecting Dr. Litchmore's conclusion that Plaintiff had "marked limitations" in key function areas (*id.* at 19, 368), the ALJ impermissibly substituted his judgement for that of a medical expert, *McBrayer v. Sec'y of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983) ("[T]he ALJ cannot arbitrarily substitute his own judgment for competent medical opinion."). And by crediting portions of Dr. Litchmore's opinion (related to Plaintiff's ability to carry and reach) and rejecting others (related to Plaintiff's ability to stand) without providing substantive reasons (Tr. at 19), the ALJ impermissibly "cherry-picked" medical evidence, *Artinian v. Berryhill*, No. 16-CV-4404 (ADS), 2018 WL 401186, at *8 (E.D.N.Y. Jan. 12, 2018) ("[W]hen the ALJ uses a portion of a given opinion to support a finding, while rejecting another portion of that opinion, the ALJ must have a sound reason for the discrepancy.").

Third, Dr. Johnson's opinion—which was the only opinion to support the RFC in its entirety—cannot constitute substantial evidence given its "checked-box" form and lack of supporting medical evidence. *Burgess v. Astrue*, 537 F.3d 117, 132 (2d Cir. 2008) ("Nor could we view as substantial evidence the box-check forms filled out by the consultants, which betray a lack of awareness of [other medical evidence]."). The nature of the "checked-box" form makes it unclear which, if any, treatment records and medical evidence Dr. Johnson relied on in reaching his conclusions. In fact, the Second Circuit has noted that the New York Office of Temporary and

---

[17] While it is unclear exactly when Plaintiff was prescribed these braces, Dr. Litchmore noted in his opinion that Plaintiff, in February 2017, was not using any assistive devices. (*Id.* at 367.)

14

Disability Assistance form that Dr. Johnson used for his opinion is "only marginally useful." *Halloran v. Barnhart*, 362 F.3d 28, 31 n.2 (2d Cir. 2004) (*per curiam*); *see also Klodzinski v. Astrue*, 274 F. App'x 72, 73 (2d Cir. 2008) (summary order) ("Dr. Scrivani's report was prepared on a standardized multiple-choice form issued by the New York State Office of Temporary and Disability Assistance which we have previously criticized as only marginally useful." (citation and quotations omitted)).

Finally, the ALJ relied on Plaintiff's statements to Dr. Gonya in October 2018 that he felt relief from many of his symptoms following the anterior cervical discectomy and fusion surgery. (*Id.* at 19, 659.) As an initial matter, this statement alone cannot constitute substantial evidence as an RFC determination must be supported by a medical opinion. *Pearson*, 2021 WL 3373132, at *4. But even assuming Plaintiff's self-report could provide a basis for the ALJ's RFC determination, it is not substantial evidence here. Despite reporting some relief after the surgery in October 2018 (*id.* at 659), Plaintiff reported "ongoing posterior neck pain" to Dr. Gonya thereafter in December 2018 (*id.* at 662). And, as Dr. Garcia noted in May 2017, Plaintiff's symptoms "are progressive with recurrent exacerbations." (*Id.* at 535.) Considering the nature of Plaintiff's symptoms and follow-up reports, therefore, the ALJ impermissibly "cherry-pick[ed]" medical evidence that supported his conclusion.[18] *Jones v. Saul*, No. 19-CV-5542 (LGS) (BCM),

---

[18] The Commissioner cites *Reices-Colon v. Astrue*, 523 F. App'x 796, 799 (2d Cir. 2013) (summary order) for the proposition that reports of improvement can constitute substantial evidence. (Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Judgment on the Pleadings, Dkt. 12-1, at 21–22.) In *Reices-Colon*, the ALJ had four separate pieces of medical evidence showing improvements in the plaintiff's condition, spanning a time period of approximately 1.5 years. 523 F. App'x at 799. The inference that the plaintiff's condition had improved was further supported by a consultative examiner's opinion. *Id.* Here, there is no medical opinion that supports such an inference, and while Plaintiff reported feeling some relief soon after the September 2018 surgery (Tr. at 659), he subsequently reported "ongoing posterior neck pain" in December 2018 (*id.* at 662), thereby undercutting the conclusion that his condition had improved because of the surgery.

15

2020 WL 5775525, at *12 (S.D.N.Y. Sept. 11, 2020), *report and recommendation adopted*, 2020 WL 5775195 (S.D.N.Y. Sept. 28, 2020) ("[An] ALJ may not 'cherry-pick' medical opinions, or selectively cite treating notes or diagnostic imaging that support the ALJ's own view while ignoring opinions and evidence that do not.").

Thus, the ALJ's RFC determination was not supported by substantial evidence.

\*     \*     \*

Because the ALJ failed to adequately develop the record or comply with the treating physician rule, and because the ALJ's RFC determination was not supported by substantial evidence, this matter is remanded pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings before the SSA.

## CONCLUSION

For these reasons, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion. The Commissioner's decision is remanded for further proceedings consistent with this Memorandum and Order. The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 30, 2022
    Brooklyn, New York